UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sightpath Medical, LLC, | Case No. 17-cv-180 (MJD/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Benjamin Kohler, | |
| Defendant. | |

---

Patrick R. Martin and Stephanie J. Willing, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 90 South Seventh Street, Suite 3800, Minneapolis, MN 55402, and Rodney A. Harrison, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 7700 Bonhomme Avenue, Suite 650, St. Louis, MO 63105 (for Plaintiff); and

Patrick D. Boyle, 711 Hennepin Avenue, Suite 501, Minneapolis, MN 55403 (for Defendant).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction, (ECF No. 8), and Defendant's Motion to Dismiss or to Transfer Pursuant to Fed. R. Civ. P. 12(b)(2) and 28 U.S.C. § 1406(a), (ECF No. 28). These motions have been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Michael J. Davis, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (ECF Nos. 12, 31). Following a hearing, the parties filed a Stipulated Permanent Consent Injunction, Order, and Judgment. (ECF No. 40). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this

Court recommends that Defendant's motion to dismiss be denied and the parties' stipulation be approved.

## I. PROCEDURAL BACKGROUND

Plaintiff Sightpath Medical, LLC ("Sightpath") filed suit on January 20, 2017, alleging a breach of contract claim against Defendant Benjamin Kohler ("Kohler"). In short, Sightpath asserts Kohler has failed to abide by the terms of a non-competition, non-solicitation, and non-disclosure agreement by working for Carl Zeiss Meditec, Inc. ("Zeiss"). On February 2, 2017, Sightpath moved for a temporary restraining order or preliminary injunction against Kohler prohibiting him from working for Zeiss. Kohler opposes Sightpath's motion, and also filed a motion seeking to dismiss or transfer this action on improper venue grounds. The parties have submitted memoranda supporting their arguments and the Court held a hearing on February 28, 2017. (ECF No. 39). The parties then agreed to a resolution of this proceeding. (ECF No. 40).

## II. FACTUAL BACKROUND

### A. Sightpath and its Confidential Information

Sightpath is a Minnesota company that provides mobile ophthalmic equipment to healthcare facilities and ophthalmic surgeons. (Decl. of Dan Robins, ¶¶ 2–4, ECF No. 13; Compl. ¶ 5, ECF No. 1). This equipment uses lasers by which doctors perform cataract and refractive surgeries. (Robins Decl. ¶ 3; Compl. ¶ 6). Sightpath does not manufacture the equipment it provides, but instead purchases it from manufacturers such as Advanced Medical Optics and Alcon LenSx, Inc. (Robins Decl. ¶ 6; Aff. of Benjamin Kohler in Opp. to TRO Mot. ¶¶ 3–4 (hereinafter "Kohler TRO Aff."), ECF No. 22; Compl. ¶ 10).

Sightpath conducts business "throughout the United States." (Robins Decl. ¶ 5). Along with the surgery equipment, Sightpath provides supplies as well as personnel who assist the surgeons during the procedure. (Robins Decl. ¶¶ 4, 7–10; Compl. ¶¶ 7–8).

Sightpath competes with other mobile equipment providers, such as Vantage, Xygent, and Fortec. (Robins Decl. ¶ 13; Kohler TRO Aff. ¶ 7; Compl. ¶ 11). Sightpath asserts that it also competes with manufacturers of equipment, such as Advanced Medical Optics, Alcon LenSx, and Zeiss, because it needs to "persuade" its customers "to continue to contract with [Sightpath] for mobile ophthalmic solutions . . . as opposed to purchasing laser equipment directly" from manufacturers. (Robins Decl. ¶¶ 13–15; Decl. of Dan Decker Concerning TRO ¶ 10 (hereinafter "Decker TRO Decl."), ECF No. 38; see Kohler TRO Aff. ¶¶ 5–6, 27; Compl. ¶¶ 11–13). As Sightpath asserts:

> Although their delivery models differ, Sightpath and Zeiss are directly competing for the same customers. A smaller customer might decide to purchase instead of lease a laser, and a larger customer might decide to lease instead of purchase a laser. If a potential customer decides to lease a laser from Sightpath, then it has no need to buy a similar laser from Zeiss. Similarly, if a potential customer decides to buy a laser from Zeiss, then it has no need to lease a similar laser from Sightpath.

(Decker TRO Decl. ¶ 10).

Sightpath "has developed confidential and propriety technology, as well as confidential standard operating procedures and practices, that enable the [Laser] Engineers and [Certified] Surgical Technicians to safely transport, install, and operate this complex equipment so that ophthalmic surgeons can perform cataract and refractive surgeries at multiple locations." (Robins Decl. ¶ 12; Compl. ¶ 14). Sightpath

> has developed and/or acquired and maintained certain confidential, proprietary, and trade secret information regarding its business, operating procedures / processes, and customers including, but not limited to . . . surgeon lists along with their affiliated hospital contact information; booked and completed procedures by surgeon and/or hospital; surgeon and facility fee schedules, including discounts; business and financial records, including vendor and supply pricing; procedures and protocols, including standard operating procedures for the installation, calibration, validation, operation, de-installation, and transportation of equipment, as well as treatment planning protocols and medical device reporting procedures; training and educational materials; continuing education programs and information for surgeons; quality assurance and patient services program materials; marketing plans; and network development programs.

(Robins Decl. ¶ 16; Compl. ¶ 14).

### B. Kohler's Employment

Kohler[1] began working for Sightpath as a Laser Engineer in March 2007, based out of Tennessee. (Robins Decl. ¶ 22; Kohler TRO Aff. ¶ 9; Aff. of Benjamin Kohler in Supp. of Mot. to Dismiss ¶ 5 (hereinafter "Kohler Venue Aff."), ECF No. 24; Compl. ¶ 20). When he was hired, Kohler signed a Confidentiality, Non-Competition and Equipment Agreement with TLC Vision (USA) Corporation, Sightpath's parent company. (Robins Decl. ¶ 23, Ex. A; Compl. ¶ 20, Ex. A). On September 1, 2011, Kohler was promoted to Senior Laser Engineer, receiving an $8,000 raise. (Robins Decl. ¶¶ 24–25; Kohler TRO Aff. ¶¶ 9–10; Compl. ¶ 21). In these engineer roles, Kohler transported, installed, and de-installed lasers at surgery sites, including calibrating and programming the lasers, as well as assisting the surgeon with the operation of the laser during surgeries. (Robins Decl. ¶ 26; Kohler TRO Aff. ¶¶ 9–10; Compl. ¶ 21).

---

[1] Kohler was born, resides, and works in Tennessee. (Kohler Venue Aff. ¶¶ 2–4). The only time Kohler has lived outside of Tennessee was when he lived in Arizona while in the U.S. Navy. (Kohler Venue Aff. ¶ 3).

On July 1, 2013, Kohler was promoted to New Technology Implementation Specialist, receiving a $10,000 raise. (Robins Decl. ¶¶ 27–28; Kohler TRO Aff. ¶ 11; *see* Decker TRO Decl. ¶ 3; Compl. ¶ 22). Kohler continued his previous engineer duties, but also established Sightpath's training program, trained new engineers, established a quality assurance program, and developed protocols and standard operating procedures which Sightpath deems confidential. (Robins Decl. ¶ 29; Kohler TRO Aff. ¶ 12; Compl. ¶ 22). Kohler also executed a new Confidentiality, Non-Competition and Equipment Agreement with Sightpath. (Robins Decl. ¶ 30, Ex. B; Decker TRO Decl. ¶¶ 2–4; Compl. ¶ 23, Ex. B). On March 16, 2015, Kohler was promoted to Mobile Operations Manager, receiving a $7,749.84 raise. (Robins Decl. ¶¶ 31–32; Compl. ¶ 27). Kohler continued with all his previous duties, but also supervised the engineers in his territory and trained engineers. (Robins Decl. ¶ 33; Kohler Venue Aff. ¶ 6; Compl. ¶ 28).

The Confidentiality, Non-Competition and Equipment Agreement (hereinafter "Confidentiality Agreement") reads, in relevant part, as follows:

> **1. NON-COMPETITION**
> As a material inducement to [Sightpath] to enter into an employment relationship with Employee, Employee covenants and agrees to comply with the following restrictions during the terms of this Agreement and for a period of one year after the termination of this Agreement.
>
> (a) Services to non-Company mobile cataract or refractive services provider or manufacturer of mobile refractive or mobile cataract equipment.
>
> . . . Therefore, the Employee shall not, within the "Restriction Area" (as defined below), provide services to any other mobile cataract or refractive services provider or vendor, directly or indirectly, either as an individual for Employee's own account, or as a partner or joint venture, or as an advisor, consultant, representative, employee, officer, director or shareholder of any corporation or other business organization. In

5

>connection with the foregoing, Restriction Area is within 25 miles of any "Customer Site" where Employee has provided services to the Company as an employee. (the "Restriction Area").
>
>(b) Competitors or Manufacturers
>
>Employee shall not, directly or indirectly, without the prior written consent of the Company, in any manner own, purchase, organize or take preparatory steps for the organization of, invest in or participate in the ownership, management, operation or control of, join, serve as a consultant or lender to or employee of, build, finance, acquire, lease, operate or manage, or permit its name, or the name of Employee or any part thereof, to be used or employed in connection with, or in any other capacity, engage in, enter into or participate in any way in any business or enterprise that provides or intends to provide services within the Restriction Area that are competitive with any business conducted by the Company during the course of Employee's employment or contemplated to be conducted by the Company at the time of termination or with any manufacturer or distributor of mobile refractive or mobile cataract equipment.
>
>(c) Clients and Accounts
>
>The Employee shall not, directly or indirectly, solicit business from any client, account or professional relationship of the Company (an "Existing Relationship") nor attempt to convert an Existing Relationship to a direct relationship with the Employee or any business or enterprise that provides or intends to provide competing services within the Restriction Area.

(Robins Decl. ¶ 30, Ex. B § 1; Compl. ¶¶ 24–25, Ex. B). The Confidentiality Agreement is governed by Minnesota law and provides that disputes be venued in either Hennepin County or the District of Minnesota. (Robins Decl. ¶ 30, Ex. B § 14; Compl. ¶ 26, Ex. B). The Confidentiality Agreement was executed by Kohler and Sightpath's Minnesota-based Vice-President of Finance. (Robins Decl. ¶ 30, Ex. B; Urban Decl. ¶ 11; Compl. ¶ 23, Ex. B).

6

During his employment, Kohler helped develop Sightpath's Mobile Femtosecond Lasers for Cataract Surgery program, participated in the validation of the LenSx Femtosecond laser, and developed Sightpath's standard operating procedures to mobilize the LenSx Femtosecond lasers. (Robins Decl. ¶¶ 35–37). Kohler was in Minnesota six times during the previous four years for various training sessions provided by, or planning meetings with, Sightpath, including co-teaching a three-hour session to laser engineers while he was a Senior Laser Engineer. (Kohler Venue Aff. ¶¶ 10–11; Urban Decl. ¶¶ 7–10; Decl. of Dan Decker ¶ 2, ECF No. 36).

During his employment with Sightpath, Kohler performed at various customer sites in Alabama, Arkansas, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Missouri, Mississippi, North Carolina, Nebraska, New Jersey, South Carolina, Tennessee, Virginia, and West Virginia. (Robins Decl. ¶¶ 39–41, Ex. C; Kohler Venue Aff. ¶¶ 7–8; Compl. ¶ 30, Ex. C). These customers contacted Sightpath using a Sightpath phone number and email address. (Kohler TRO Aff. ¶ 19). In relation to his job, Kohler communicated by telephone and email with Sightpath's Human Resources, Finance, Inventory, and IT departments "a few times per month." (Decl. of Dolores Urban, ¶¶ 3–6, ECF No. 33). Kohler communicated with a Sightpath operations coordinator located in Minnesota approximately once per day from March 2013 to November 2016 to schedule customer visits. (Decl. of Jennifer Adam ¶¶ 1–5, ECF No. 34; Decl. of Lauren Hartel ¶¶ 1–5, ECF No. 35).

On November 4, 2016, Kohler resigned with Sightpath effect November 18, 2016. (Robins Decl. ¶ 43; Kohler Venue Aff. ¶ 13; Compl. ¶ 32, Ex. D). On or before his last

day of employment, Kohler returned to Sightpath all confidential materials and Sightpath equipment, such as his cell phone and tablet computer. (Kohler TRO Aff. ¶¶ 22–25). On January 13, 2017, Sightpath learned Kohler may have gone to work for Zeiss as an engineer, so it sent Kohler an email. (Robins Decl. ¶¶ 45–46, 50 Compl. ¶¶ 33–34, Ex. E). Through subsequent email communications, Sightpath told Kohler that "if [he is] working in any capacity as [an engineer] on lasers, [he is] in violation of [his] non-compete." (Robins Decl. ¶ 47, Ex. F; Compl. ¶ 37, Ex. E). In response, Kohler stated:

> I have moved on. I have no delusions that you all are disappointed in my abrupt departure. I was given an opportunity to better my life and that of those that depend on me. I do not ever intend to divulge any information or operations you may have there at [Sightpath], or ever work in a field that [Sightpath] has hands in. I will not ever try and get someone from [Sightpath] to come and work where I am. But I do have to make a living.

(Robins Decl. ¶ 47, Ex. F; Compl., Ex. E; *see* Kohler Venue Aff. ¶¶ 14–16). Kohler is currently working at Zeiss as a Field Support Engineer where he installs, maintains, and upgrades Zeiss lasers. (Kohler TRO Aff. ¶¶ 13–14; Compl. ¶ 36). Kohler does not perform sales or solicit customers, perform clinical support, or train or manage other employees. (Kohler TRO Aff. ¶ 15).

### III. KOHLER'S VENUE CHALLENGE

Kohler asserts that he does not live or work in Minnesota and none of the events giving rise to Plaintiff's Complaint occurred in Minnesota, demanding this matter be dismissed or transferred to the proper venue. Sightpath opposes.

### A. Legal Standard

Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) authorize dismissal when venue is "wrong" or "improper." *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S.Ct. 568, 577 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* Such a question is governed by 28 U.S.C. § 1391. *Id.*

> Under that statute, a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). When a party challenges venue, "the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atlantic Marine*, 134 S.Ct. at 577; *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("The statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there."). Moreover, "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Pecoraro v. Sky Ranch for Boys,*

*Inc.*, 340 F.3d 558, 563 (8th Cir. 2003). Thus, a case that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.*

When considering a Rule 12(b)(3) motion, the Court applies the same standard used for other motions to dismiss. *Transocean Grp. Holdings Pty Ltd. v. South Dakota Soybean Processors, LLC*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007) (citation omitted). The reviewing court "construe[s] all facts in the light most favorable to the non-moving party, and take[s] the facts alleged in the complaint as true." *Id.* (citation omitted). The burden of proof is on the party claiming improper venue. *Id.* (citing *United States v. Orshek*, 164 F.2d 741, 842 (8th Cir. 1947)). "To discharge that burden, the defendant must submit affidavits or other evidence defeating venue in the chosen forum." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, Case No. 09-cv-720 (RHK/JJG), 2009 WL 1684428, at *2 (D. Minn. June 16, 2009) (citing *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)). "Accordingly, unlike motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider matters beyond the pleadings when ruling on a motion to dismiss for improper venue. *Id.*

### B. Analysis

Because Kohler does not reside within the District of Minnesota, § 1391(b)(1) does not apply. Thus, for venue to be appropriate in the District of Minnesota, Minnesota must have been the location "in which a substantial part of the events or omissions giving rise to the claim occurred" or if no such district exists, if he is subject to the personal jurisdiction of the District of Minnesota. 28 U.S.C. §§ 1391(b)(2)–(3).

The Court now turns to whether a substantial part of the events giving rise to the claim occurred in Minnesota. Kohler asserts that because he was based out of Tennessee while employed by Sightpath and is now working out of Tennessee for Zeiss, the events arose there rather than in Minnesota. "In making our determination, we do not ask which district among two or more potential forums is the 'best' venue, rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro*, 340 F.3d at 563. Thus, even if Kohler is correct in arguing that Tennessee would be a better suited venue, the Court's analysis is not whether Minnesota is the "best" venue, but whether Minnesota has a substantial connection to the claim at issue. *Id.* In making this inquiry, the court need not "*only* consider the defendant's allegedly wrongful activities. But the court's *focus* must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (emphasis in original).

Kohler was employed by Sightpath, a Minnesota company, for nearly ten years. Kohler and Sightpath's dispute revolves around the obligations imposed by the Confidentiality Agreement, signed as a result of Kohler's employment with Sightpath. During his employment, Kohler communicated on a near-daily basis with Sightpath employees in Minnesota to receive his assignments. Kohler also communicated with other Minnesota-based Sightpath departments on a near-monthly basis. Kohler assisted Sightpath in developing a specific laser program and mobilizing another company's lasers. Kohler traveled to Minnesota on at least six occasions during the previous four

years, including an occasion during which he co-taught a training session. This is sufficient for the Court to conclude that Kohler's connection with Minnesota, by reason of Sightpath, is substantial; Kohler's relationship with Sightpath "form[s] a necessary predicate for all of [Sightpath's] claims." *Advanced Logistics*, 2009 WL 1684428, at *3.

This case is similar to *Commodities Specialists Co. v. Brummet*, Case No. 02-cv-1459 (JRT/FLN), 2002 WL 31898166, at *6–*7 (D. Minn. Dec. 27, 2002). In that case, Brummet worked in Tennessee and signed an agreement concerning proprietary information and an employment contract with his Minnesota-based employer. *Id.* at *1. Those contracts were drafted and executed by the employer in Minnesota. *Id.* at *6. Through his employment, "Brummet allegedly obtained confidential information through regular phone calls and communications with Minnesota." *Id.* The court concluded there were substantial contacts sufficient to support venue in Minnesota. *Id.* Like *Brummet*, Kohler contracted with his Minnesota-based employer, the employer signed those agreements in Minnesota, and Kohler had regular contact with Sightpath via its employees in Minnesota. Additionally in this case, Kohler was physically in Minnesota on six occasions in connection with Sightpath activities.

Kohler places much emphasis in his motion on *Sightpath Medical Servs., LLC v. Terry*, 2015 WL 362662, at *1 (E.D. Mo. Jan. 27, 2015). In that case, Terry moved to dismiss for improper venue. *Id.* Terry, a resident of Montana, was a former Sightpath employee and signed a confidentiality agreement. *Id.* That confidentiality agreement provided for venue of legal disputes in Missouri. *Id.* Sightpath brought suit against Terry in the Eastern District of Missouri after Terry "began (or was to begin) working with

Sightpath customers, and using Sightpath's confidential information" in violation of the confidentiality agreement. *Id.* The court held:

> Upon considering Sightpath's allegations in conjunction with the venue statute, the Court finds venue in the Eastern District of Missouri to be improper. Sightpath does not maintain Terry is a resident of Missouri, *nor does it contend that a substantial part of the events or omissions giving rise to its claims occurred in Missouri.* Furthermore, this action may be brought in Montana, where Terry both resides and is subject to personal jurisdiction.

*Id.* at *2 (emphasis added). The court provided no further analysis.

*Terry* is distinguishable from the instant case. Here, Sightpath alleges a substantial part of the events occurred in Minnesota and that Kohler has had frequent contacts with Minnesota. In *Terry*, Sightpath only asserted that Terry visited Missouri on a single occasion to pick up a van unrelated to his employment. (*See* Decl. of Stephanie Willing (Feb. 27, 2017) ¶ 2, Ex. A, ECF No. 37). Thus, this Court finds the facts and reasoning of *Terry* inapplicable to the situation presented in this case.

The Court concludes that Minnesota has a substantial connection to the claim at issue, satisfying the venue requirements of 28 U.S.C. § 1391(b)(2). Therefore, the Court recommends Kohler's motion be denied.

## IV. PRELIMINARY INJUNCTION

Following the hearing on the motion to dismiss and motion for temporary restraining order, the parties resolved their dispute as relates to Plaintiff's outstanding motion. (ECF No. 40). Upon review of the parties' stipulation, this Court recommends its approval. If the stipulation is approved, this Court recommends that Plaintiff's Motion for

Temporary Restraining Order and/or Preliminary Injunction, (ECF No. 8), be denied as moot.

## V. RECOMMENDATION

Sightpath seeks relief against a former employee via enforcement of a Confidentiality Agreement. Kohler seeks to dismiss this action for improper venue. Venue is not improper in Minnesota, so this Court recommends the motion be denied. The parties' stipulation should be adopted and this matter dismissed pursuant to the parties' resolution.

Based on the foregoing and the record, files, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss or to Transfer Pursuant to Fed. R. Civ. P. 12(b)(2) and 28 U.S.C. § 1406(a), (ECF No. 28), be **DENIED**.

2. The parties' Stipulated Permanent Consent Injunction, Order, and Judgment, (ECF No. 40), be **APPROVED**.

[Continued on next page.]

3.      Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction, (ECF No. 8), be **DENIED AS MOOT**.

Date: March 3, 2017                                        *s/ Tony N. Leung*
                                                           Tony N. Leung
                                                           United States Magistrate Judge
                                                           District of Minnesota

                                                           *Sightpath Medical v. Kohler*
                                                           Case No. 17-cv-180 (MJD/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.